135 So.2d 772 (1961)
Harry I. MAGID, Appellant,
v.
James E. MOZO, Appellee.
No. C-340.
District Court of Appeal of Florida. First District.
December 12, 1961.
Rehearing Denied January 10, 1962.
Coxe & Stephens, St. Augustine, for appellant.
*773 Alex D. Littlefield, Jr., Daytona Beach, and Fred R. Brannon, Jr., New Smyrna Beach, for appellees.
STURGIS, Judge.
Pursuant to verdict of the jury in a suit for personal injuries arising out of an automobile accident, final judgment was entered in favor of plaintiff-appellee, and defendant appeals.
The critical points of law for determination are: (1) Whether the trial court erred in permitting plaintiff's attorney, over objection of the defendant, to use the so-called "Golden Rule" argument in his address to the jury. (2) Whether the trial court erred in denying defendant's motion for a new trial on the basis of the showing made as to the method employed by the jury in arriving at the amount of damages to be awarded to the plaintiff.
Counsel for plaintiff addressed the jury in part as follows:
"Gentlemen, there is no way that you can measure his pain and suffering and the only thing I can suggest for you to do is put yourself in the plaintiff's place and try to figure out how much it would be worth to you to go through the pain and suffering which Mr. Mozo went through."
Defendant objected thereto on the ground that such argument invoked the proposition of the jury putting themselves in the place of the plaintiff, whereupon the court announced: "Yes sir, it will be noted. I will instruct the jury on that." The record fails, however, to disclose that the court instructed the jury in the premises. The quoted type of argument, commonly known as the "Golden Rule" argument, is forbidden. Bullock v. Branch, Fla.App. 1961, 130 So.2d 74. It was inappropriate in this cause and failure of the court, upon timely objection, to promptly charge the jury with its impropriety, constitutes prejudicial error.
After deliberating for approximately one hour, the jury requested and was furnished with a writing tablet or pad. Approximately twenty minutes later it returned a verdict in favor of plaintiff for $10,458.45. Court was then adjourned and shortly thereafter the clerk of the court unlocked the door to the jury room in which eight pieces of paper were found. These were examined by the plaintiff and his attorney and by defendant's attorneys, and at the instance of the latter were photostatically reproduced by the clerk of the court. The originals were attached to and made part of defendant's motion for new trial based on the ground, inter alia, that the verdict was illegal. On each of six of these papers was written a figure, respectively as follows: "12000"; "$1,000.00"; "1200"; "$12,000"; "25,000"; "4,000.[00]". A seventh paper bears only the figure "1258.45"; and the remaining paper contains figures and symbols indicating that the figures shown on the six first mentioned papers were totaled and the result divided by six, producing the quotient "9200". At another point thereon it is indicated that the quotient "9200" was then added to the figure found on the above-mentioned seventh paper ("1258.45"), resulting in a total of "$10,458.45", which in dollars and cents is the exact amount of the verdict. The transcript of the evidence reflects that $1258.45 is the exact amount of the medical expenses established by plaintiff's proofs, and opposite the figure "1258.45" on the last-mentioned addition appears the symbol "Dr."
Also attached to and made a part of the motion for a new trial was an affidavit by one of defendant's attorneys attesting the foregoing facts concerning the finding and content of said papers. The affidavit also reflects that within several days after said papers were found the affiant obtained from the foreman of the jury a detailed oral statement of the procedure followed by the jury in arriving at its verdict, which was to the effect that after it was agreed that the plaintiff was entitled to recover and that the total of his claim for medical bills was *774 $1258.45, it developed that the jurors had widely divergent opinions as to the amount which should be allowed for the other items of damage, whereupon it adopted a procedure by which a writing pad was procured and each juror placed on a separate piece of paper a figure reflecting the amount of damages over and above the item of $1258.45 for medical expenses, as to which all were in accord, which he felt the plaintiff was entitled to recover; that the amounts so reflected were added together and the total divided by six (the number of jurors), producing the figure $9200.00, to which was added the agreed sum of $1258.45 for medical expenses and the result ($10,458.45) was adopted as the verdict of the jury and returned accordingly. The affidavit also recites that said juror informed affiant that he would make an affidavit to the above effect and requested affiant to draft the same for his signature; that on the next day affiant submitted such draft[1] to the juror for signature, whereupon the juror informed him that on the previous night he had contacted all but one of the jurors and that they had agreed not to make any affidavits but that all were willing to testify if subpoenaed for that purpose; that he then read to the juror the draft of the affidavit so prepared (the same being attached to and made part of the affidavit) and the juror acknowledged that it correctly stated the facts and that he and the other jurors would testify to all the matters stated therein if subpoenaed to do so, but nevertheless persisted in refusing to sign it because of the agreement with the other jurors.
Defendant's motion for new trial was filed July 30, 1960. On October 6, 1960, the plaintiff filed an affidavit of Steve Cyzycki, one of the jurors, to the effect that the jury, after determining that defendant was liable, considered several methods of arriving at a verdict, including the method employed, but that neither the affiant nor any of the *775 other members of the jury agreed in advance that they would be bound by the result of said addition and division as the amount of the verdict to be returned by the jury in said cause; that the jury believed that the verdict for $10,458.45 was equitable, just and compensatory to the plaintiff. Affiant also stated the obvious proposition that he "and the other members of the Jury did not return a verdict in the amount of the aforesaid addition and division which was $9200.00," but significantly omitted any explanation of the singular fact that $9200.00, plus the amount of the uncontradicted medical expenses, totaled $10,458.45, the amount of the verdict. Considered as a whole, this affidavit is fat with negative pregnancy.
In view of the situation presented by the agreement of the jurors not to furnish an affidavit, as reflected by the affidavit of defendant's attorney, the showing made by said affidavit adequately presented to the trial court the question of the validity of the verdict.
Any question as to the procedure followed by the jury in arriving at its verdict is conclusively set at rest by the affidavit of Steve Cyzycki, filed by plaintiff prior to the entry of the order denying defendant's motion for new trial.
In Marks v. State Road Department, Fla. 1954, 69 So.2d 771, 774, the Florida Supreme Court adopted the rule laid down in Wright v. Illinois & Mississippi Telegraph Co., 20 Iowa 195, 210, as follows:
"* * * affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as * * * that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner * * *."
Adhering thereto, we hold that where, independent of affidavits of the jury, it is clearly made to appear that the jury has violated the rule in Marks, and that diligent but unsuccessful effort is made to procure the affidavit of one or more of the jurors upon the subject, due to circumstances such as reflected here, then it is competent to consider the affidavit of counsel for a party in interest presenting such irregularities. As a corollary to that rule, it is recognized that the trial court has adequate machinery by which to test the accuracy of the facts upon which the verdict is assailed, and we are not unmindful that great reluctance and care should be exercised in interfering with the verdict of a jury and that a challenge to its regularity must be diligently presented and pursued. That was done in this case.
In Jackson Grain Co. v. Hoskins, Fla. 1954, 75 So.2d 306, the Florida Supreme Court, speaking through Justice Thomas, in reversing and remanding for a new trial reaffirmed the rule in Marks. It was there held that a judgment based upon a verdict determined by aggregation and average engaged in by five of the six jurors, and where the sixth juror accepted the average so arrived at, was not cured simply because the sixth juror sat mute when the verdict was received by the court, even though each of the jurors filed an affidavit that he did not agree in advance that the quotient obtained by using the divisor "5" would be the amount of the verdict. Applying that situation to the case now on review, the affidavit of juror Cyzycki filed on behalf of the plaintiff does not overcome the clear inference that the jury herein rendered a quotient verdict.
We find no error in the fact that the trial court, over objection of the defendant, permitted counsel for plaintiff, in his argument to the jury, to state specific amounts of money which plaintiff considered himself entitled to recover for the respective items of damage alleged by the complaint. Appellant's assignments of error and points of law predicated thereon are either found to be without merit or of such nature as, in view of our above discussion, not to require disposition on this appeal.
*776 The judgment appealed must be and it is hereby reversed and the cause remanded for a new trial.
CARROLL, DONALD K., Chief Judge, and RAWLS, J., concur.
NOTES
[1] The text of the draft reads:

"I was the foreman of the jury in the trial of the damage suit in the Circuit Court for Flagler County, Florida, in which James E. Mozo was plaintiff and Harry I. Magid was defendant, which trial took place on July 10, 20 and 21, 1960 at Bunnell, Florida.
"After the jury retired we at first considered the question of liability. All six jurors agreed that the defendant was liable and also that the plaintiff was entitled to the total amount of his medical bills. We then considered and discussed and attempted to arrive at a sum for other damages over and above the medical bills. Some were high and some were low. We could not agree on any amount for the other damages. After some time passed Mr. Russell R. Improta, one of the jurors, suggested that we get a pad and put down the amount representing each juror's opinion as to what the plaintiff was entitled to have for damages over and above the medical bills, then add those amounts and divide the total by 6, and then add the result obtained to the medical expenses and accept that as our verdict.
"We all agreed to the method suggested by Mr. Improta and sent for a pad. I did not think I should do the writing or figuring because I was foreman, so Mr. Improta did it. At first he wrote each of our names on a sheet of paper and intended to put the figure each juror wanted next to his name, but some objected and wanted it by secret ballot, so we all agreed to have a secret ballot. We tore a sheet of paper into six pieces and we each took one. Each juror wrote his figure on his piece of paper. One of us then held juror Frank S. Steflik, Jr.'s cap and closed it together except for one side and each put his slip of paper into the cap. After that the slips were drawn out one at a time and the figure on it was read to Mr. Improta and he wrote them down on the sheet of paper. Mr. Improta then added them up and divided the total by 6. He made a mistake the first time and divided it over again. This time he got a total of $9,200. That total was added to the medical bills, $1,258.45, and made a total of $10,458.45 and that total was accepted as our verdict and written into the verdict form which we had. I then signed the verdict and we returned it into court.
"No one of us knew the amount any of the others put down on the piece of paper.
"I have seen the pieces of paper attached to the defendant's motion for a new trial marked `Exhibit A' and also the sheet attached to said motion marked `Exhibit B.' They are the original papers which I have described and been talking about in this affidavit."